IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MELISSA MILLER, | **AMENDED COMPLAINT** |
| Plaintiffs, | |
| v. | Case No.: 2:21-cv-4194 |
| MARC JONES CONSTRUCTION, LLC d/b/a SUNPRO SOLAR | **JURY TRIAL DEMANDED** |
| & | |
| JOHN DOE CORPORATIONS 1 THROUGH 10, and OTHER JOHN DOE ENTITIES 1 THROUGH 10, all whose true names are unknown | |
| Defendants. | |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Melissa Miller, by and through undersigned counsel, and for her Amended Complaint against Defendant Marc Jones Construction, LLC d/b/a Sunpro Solar (hereinafter "Solar") and John Doe Corporations 1 Through 10 and Other John Doe Entities 1 Through 10, all whose true names are unknown, ("John Does", and together with Solar, "Defendants") and for their violations under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and Mo. Rev. Stat 407.010, Missouri Merchandising Practices Act ("MMPA"), states to the Court as follows:

## INTRODUCTION

1. The TCPA was enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012).

2. Defendants, upon information and belief, make auto-dialed calls to individuals across

1

the country.

3. Defendants attempts to telemarket their products and services to consumers across the country.

4. Unfortunately, Defendants do not obtain prior express written consent to place these autodialed telemarketing calls, does not abide by the FTC's do-not-call list, and does not maintain its own internal do-not-call list, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5. These autodialed calls placed by Defendants caused Plaintiff and class members to suffer actual harm and legal injury. Plaintiff has suffered aggravation, invasion of privacy, nuisance due to receiving such calls. Plaintiff and class members suffered from the diminished use, enjoyment, utility, and value of their telephones as these calls interfered with their access to their cell and residential phones.

6. The TCPA was enacted to protect consumers from unauthorized and unwanted autodialed calls exactly like the ones alleged in this case. See Mims v. Arrow Fin Servs., LLC, 132 S.Ct., 740, 745 (2012). Defendants placed these autodialed calls despite the fact that Plaintiff never provided Defendants with prior express written consent to receive them.

7. Senator Hollings, the TCPA's sponsor described these autodialed calls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

8. By placing the autodialed calls at issue to individuals on both the FTC do-not-call registry and who should be on an internal do-not-call list, Defendants have violated the privacy and statutory rights of Plaintiff and caused her to suffer actual harm by subjecting her to the aggravation that necessarily accompanies the receipt of such repeated and unauthorized autodialed calls.

9. Plaintiff therefore seeks an injunction requiring Defendants to maintain and abide by an internal do-not-call registry, as well as an award of actual and statutory damages, together with costs and reasonable attorneys' fees.

**PARTIES**

10. Plaintiff Melissa Miller ("Plaintiff") is a resident of the State of Missouri.

11. Defendant Marc Jones Construction, LLC d/b/a Sunpro Solar is a Louisiana limited liability company organized in the state of Louisiana with its principal place of business in Mandeville, Louisiana.

12. Sunpro Solar is a registered trademark of Marc Jones Construction, LLC.

13. Upon information and belief, Defendants provide phone numbers to various individuals and third-parties in order to have such parties solicit consumers on Defendant Solar's behalf.

14. Upon information and belief, Defendants John Doe Corporations 1 through 10 (the "Corporate Defendants") are corporations, the names and addresses of residence of which are unknown.

15. Upon information and belief, Defendants Other Entity Defendants 1 through 10 (the "Other Entity Defendants") are other legal entities, the names of addresses of residences of which are unknown.

**JURISDICTION AND VENUE**

16. This Court has personal jurisdiction over Defendants because Defendants frequently transacts business in this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

17. Venue is proper because a substantial part of the events, actions, and omissions of Defendants, which give rise to the claims and subjects Defendants to liability for this auto-dialed

calling campaign and failure to maintain and internal do-not-call list, occurred in this circuit.

18. Plaintiff resides in this venue and received the at-issue calls while in this venue.

19. Plaintiff's area code, (417), is associated with the western half of Missouri. Thus, any party texting or calling Plaintiff should reasonably expect Plaintiff to reside in this district.

20. Defendant Solar is incorporated in and domiciled in the state of Louisiana with its principal place of business located in Mandeville, Louisiana and attempts to market and sell its services throughout the entire country.

21. Plaintiff is an individual located in Columbia, Missouri.

22. Defendant John Does must have interacted with, or otherwise availed themselves of this jurisdiction by communicating with, or instructing others to communicate with Plaintiff, whom they knew resided in this venue.

23. This Court has personal jurisdiction over Defendants because they have purposefully availed itself of this jurisdiction and specifically, this Circuit, as the events giving rise to this lawsuit occurred in and emanated from, in substantial part, this Circuit.

## **TCPA BACKGROUND**

24. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

25. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

Residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

- - -

Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. *Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

### *The TCPA imposes vicarious liability on third-parties who do not physically dial the calls*

26. Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Sections 227(b) and 227(c), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. Filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

27. A seller is liable under Sections 227(b) and (c) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47.

28. Additionally, a seller may be vicariously liable for violations of those provisions under principles of apparent authority and ratification. Factors relevant to a finding of vicarious liability include:

   a. Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including…access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information,"

   b. Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems,"

   c. Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark,"

d. Whether the "seller approved, wrote or reviewed the outside entity's telemarketing scripts," and

e. "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id.* ¶ 46.

## STANDING

29. The TCPA, 47 USC 223(b)(3) confers a private right of action to any person an action based on violations the statute.

## FACTUAL ALLEGATIONS

30. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

31. Defendant Solar, in an effort to market its products, contracts or otherwise engages with various vendors to make calls on its behalf.

32. These vendors, John Does, are given the names and identifying information of individuals by Defendant Solar, and Defendant Solar controls who is called, how often, and what is said on each call.

33. Defendant Solar additionally makes calls on its own behalf to various consumers in an attempt to telemarket their products.

34. On or about December 2020, Plaintiff inquired regarding solar panels through an online form.

35. Solar Lead Factory obtained Plaintiff's information through this inquiry.

36. Solar Lead Factory contracts with or otherwise engages with Defendant Solar wherein Solar Lead Factory generates new leads and then sells that information to companies, including Defendant Solar.

37. Defendant Solar purchased Plaintiff's information from Solar Lead Factory.

38. Then, on a specific date better known by Defendants, Defendants began contacting Plaintiff via telephone via phone calls.

39. When the telemarketing campaign begin, Defendants attempted to telemark solar paneling products to Plaintiff.

40. Plaintiff does not otherwise have an existing relationship with Defendants.

41. Plaintiff is the regular user, owner, and only individual assigned to the personal phone number (417) 894-4439 and was the recipient of Defendants' calls to that number.

42. Plaintiff's personal phone number, (417) 894-4439 is assigned to her personal cellular phone service.

43. Plaintiff does not use this telephone line for any business purposes.

44. The calling campaign originally began on a date better known by Defendant Solar.

45. In January 2021, Plaintiff advised Defendant Solar, either directly or through its representatives, that she no longer wished to receive calls.

46. The individual on the phone called in an attempt to sell Solar products to Plaintiff.

47. The individual on the phone called from a (417) area code.

48. The individual on the phone used the Onvoy carrier.

49. Upon information and belief, Defendant Solar, or those to which it outsources, John Does, use the (417) area code and Onvoy in order to telemarket Solar services.

50. Defendant Solar, either directly, or through John Does, use several various numbers in order to appear as though the call is coming from a local individual or company, when in fact, these numbers are "spoofed" or purchased and sold after a brief period of time in order to continually evade detection.

51. Defendant Solar has represented that it makes calls itself, as well as that it uses vendors, John Does, to make phone calls on its behalf.

52. For the calls Solar used a vendor, Solar must have provided all of the information of the individuals to be called, as well as determined how often calls were made and the content of each call.

53. For the calls Solar made directly, it controlled the timing and content of such calls.

54. Plaintiff informed Defendants that she was not interested in Solar services and wished for the calls to cease on this January 2021 phone call.

55. At that point in time, Defendant Solar became aware they did not have a business relationship with Plaintiff, that Plaintiff did not wish to have a business relationship with Defendant Solar, and that Plaintiff wished to be added to Defendant Solar's internal do-not-call list.

56. Unfortunately, Defendant Solar continued their telemarketing campaign.

57. Defendants made numerous calls from various numbers, always telemarketing the same Solar products to Plaintiff.

58. Defendants made numerous phone calls from various numbers, even after being told that Plaintiff was not interested and wished to be placed on Defendants' do not call list.

59. Numbers Defendants called from include but are not limited to (417) 222-3927 and (417) 222-3601.

60. After unequivocally revoking any consent to receive telemarketing phone calls, Defendants continued to contact Plaintiff.

61. Plaintiff again answered an incoming call from Defendant on or about May 2021, wherein the representative identified herself as a Solar representative and Plaintiff for the second time advised that the calls must cease.

62. Defendant Solar confirmed this call was made, and thus confirmed the phone number, (417) 222-2927 as Defendant Solar's.

63. Plaintiff received calls from this specific number twice on April 13, 2021, on April 14, 2021, twice on May 6, 2021, on May 7, 2021, and on May 8, 2021.

64. Each of these calls occurred after Plaintiff advised in January 2021 that she did not wish to receive calls regarding Defendant Solar.

65. Even after Plaintiff revoked consent for the second time, Defendant Solar call again.

66. The representative again advised that he worked with Defendant Solar and stated that he requested she reconsider her choice to be removed from the do-not-call list.

67. Plaintiff received at least thirty-three (33) phone calls from Defendants after insisting that the telemarketing campaign cease.

68. Upon information and belief, Plaintiff has received well in excess of thirty-three (33) phone calls, to be determined by the discovery phase as Defendants do not only use one phone number to contact and harass individuals.

69. These calls continued for four months after Plaintiff requested that the calls cease, and thus Plaintiff's request to be placed on the internal do not call list was not honored within a reasonable time period.

70. There exists no good cause why Defendants would need more than the maximum thirty days in which to place Plaintiff on its internal do not call list and begin honoring that request.

71. Had Defendants used reasonable procedures including proper training and recording of do not call requests, then Plaintiff would no longer have received calls. If Defendants did properly record the do not call request, then it clearly did not abide by implanting such request in a reasonable time period. Either way, Defendants do not maintain the proper procedures required in reference to its internal do not call list.

72. Defendants refused to stop this harassment.

73. Defendants knew that Plaintiff did not wish to be called but continued to do.

9

74. Plaintiff does not have a business relationship with Defendants, or any of its representatives or affiliates.

75. Plaintiff explicitly advised Defendants that she wished to no longer receive these telemarketing communications from Defendants.

76. Plaintiff has had to constantly endure these harassing telemarketing calls throughout her day as they invaded upon her privacy and solitude.

77. Defendants knew that they continued to call to attempt to telemarket services from an individual who attempted to prevent her phone number from receiving such harassing calls.

78. These continued calls were harassing and intended to frustrate Plaintiff.

79. Plaintiff instructed Defendants' agents/representatives to stop calling her device.

80. Even if Defendants believed they had consent to call Plaintiff, Plaintiff made clear that they did not have consent and should cease all calls.

81. Defendants' "systems" are required to include an internal Do Not Call Lists.

82. Defendants continued to call individuals placed on the internal Do Not Call List despite consumer's requests to be placed on such a list.

83. Defendants utilize other third-party John Doe companies in order to make some or all of these telemarketing calls on their behalf.

84. As these third-parties John Does called on behalf of Defendant Solar, Defendant Solar is responsible for confirming that John Does maintained proper procedures when calling on Defendant Solar's behalf.

85. Each call made by John Does on behalf of Defendant Solar is attributable not only to John Does, but to Defendant Solar as well.

86. Were in not for Defendant Solar seeking telemarketing calls in this illegal manor, such calls would not have been made to Plaintiff by John Does.

87. Each subsequent call Defendants made to Plaintiff's telephone after the January 2021 call wherein Plaintiff asked for the calls from Defendants to cease, was knowing and willful and done so without the express consent of Plaintiff.

88. Defendants intentionally harassed and abused Plaintiff on numerous occasions by regularly calling several times in a row.

89. Upon information and belief, Defendants have engaged in business strategies that include marketing through illegal telemarketing calls.

90. Not a single call placed by Defendants to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 277(b)(1)(A).

91. Defendants willfully and knowingly violated the TCPA with respect to Plaintiff.

117. Each call made to Plaintiff caused actual damages as Plaintiff must pay for the use of her cell phone, including for the minutes of usage. By knowingly calling a consumer who wished to not receive calls, Defendant knowingly damaged Plaintiff.

92. Each phone call placed by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of invasion of privacy and the intrusion upon her right of seclusion.

93. Each phone call placed by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of unnecessary expenditures to her time. For the calls Plaintiff answered, the time spent on these calls was unnecessary as Plaintiff repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time silencing the call or deleting the voicemail. This also impaired the usefulness of Plaintiff's phone, which is designed to inform the user of important and legitimate missed communications.

94. Each phone call placed by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of occupation of her phone line by unwanted calls, making the phone

unavailable for legitimate callers, messages, or outgoing calls and messages, while the phone was alerting Plaintiff to yet another call from Defendants.

95. Each phone call where a voice message was left by Defendants without the consent of the Plaintiff occupied space in Plaintiff's phone.

96. Every phone call placed by Defendants without express consent to Plaintiff's phone resulted in injury of trespass to Plaintiff's chattel, namely her telephone.

97. As a result of the calls described above, Plaintiff was affected in a personal and individualized way through stress, anxiety, nervousness, distress and aggravation.

98. Defendants' conduct has caused Plaintiff to suffer damages including, but not limited to, the loss of time incurred by Plaintiff as well as attorneys' fees paid for advice regarding her situation.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*
### Do Not Call Violations

99. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

100. The foregoing acts and omissions of the Defendant constitutes violations of the TPCA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*.

101. Defendants violated the TCPA by failing to maintain reasonable procedures to place Plaintiff on their internal do not call list.

102. The TCPA provides a private right of action, wherein a person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

    a. An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation.

    b. An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater; or

      c.      Both such actions.

103.    The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

104.    The TCPA is a strict liability statute and Defendants are liable to Plaintiff, even if its actions were only negligent.

105.    Defendants called a consumer telephone subscriber on her personal cellular device who had asked numerous times to be on its company-specific do-not-call lists, and thus failed to maintain its internal do-not-call list so as to cease calling individuals who request Defendants do so.

106.    If the Court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (b) of this paragraph. 47 U.S.C. § 227(b)(3).

107.    Plaintiff is also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, respectfully requests that the Court grant Plaintiff, and the following joint and severable relief against the Defendants:

    a.    Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

    b.    As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff, seeks treble damages, as provided by statute, of up to $1,500 for each and every call that willfully violated the TCPA;

    c.    As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff seeks $500 in statutory damages for each and every call that negligently violated the TCPA;

13

d. A declaration that Defendants' conduct violated the TCPA and that this action is just and proper;

e. An award of costs and such further relief as the Court may deem just and proper;

f. That this Court award pre-judgment and post-judgment interest at the statutory rate of 9%;

g. That this Court award Plaintiff's her attorney fees and all expenses incurred in preparing and prosecuting this claim; and

h. Such other relief as this Court may deem just and proper.

## COUNT II
## VIOLATIONS OF MISSOURI CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT CHAPTER 407

118. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

119. In accordance with Chapter 407, Plaintiff brings Count II for Defendants' practice of making unsolicited and unlawful telephone calls to Plaintiff's telephone number after permission has been revoked.

120. Section 407.1076(4) states that it is an unlawful telemarketing act or practice for any seller or telemarketer to engage in . . . knowingly and willfully initiating a telemarketing call to a consumer, or transfer or make available for to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

121. Section 407.1082 clearly states that Section 407.1076(4) confers a private right of action and violators shall be subject to all penalties, remedies and procedures provided by sections 407.010 to 407.030.

122. Section 407.1082 further advises that all remedies under this section are cumulative and in addition to any other remedies available by law.

123. Defendants violated the Act by engaging in an unscrupulous business practice and by violating Missouri public policy, which public policy violations in the aggregate caused substantial injury to Plaintiff.

124. Defendants knowingly and willfully continued to call Plaintiff after she advised she no longer wished to be called by or in reference to Defendant Solar.

125. Plaintiff never rescinded her request that the calls cease.

126. Plaintiff routinely uses her telephone. Defendants' actions prevented Plaintiff from using her telephone during the time Defendants contacted Plaintiff's telephone for Defendants' unlawful purposes. Plaintiff lost valuable time receiving Defendants' unlawful telephone calls.

127. Each call made to Plaintiff caused actual damages as Plaintiff must pay for the use of her cell phone, including for the minutes of usage. By knowingly calling a consumer who wished to not receive calls, Defendants knowingly damaged Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following joint and severable relief against the Defendants:

    a. That this Court award judgment against Defendants in a total amount in excess of the $25,000 jurisdictional amount of this Court to be proven at trial;

    b. That this Court award damages to Plaintiff, and all others similarly situated;

    c. That this Court award punitive damages to Plaintiff, and all others similarly situated;

d. That this Court declare that Defendants' conduct violated the MMPA and that this action is just and proper;

e. That this Court award Plaintiff, and all others similarly situated, damages and attorney fees for violation of The Missouri Consumer Fraud and Deceptive Business Practices Act Chapter 407;

f. That this Court award Plaintiff's attorneys' fees and costs;

g. That this Court award Plaintiff all expenses incurred in preparing and prosecuting these claims;

h. That this Court enter an injunction prohibiting Defendants from such violations of the MMPA by the Defendants in the future; and

i. Awarding such further relief as this Court may deem just and proper.

## JURY DEMAND

122. Plaintiff hereby demands a jury trial on all counts so triable.

Dated: December 21, 2021

Respectfully Submitted,

**HALVORSEN KLOTE**

By: /s/ Samantha J. Orlowski

Samantha J. Orlowski, #72058
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO 63141
P: (314) 451-1314
F: (314) 787-4323
sam@hklawstl.com
joel@hklawstl.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    I, Samantha J. Orlowski, hereby certify that on this 21st day of December 2021, I caused a copy of the foregoing document to be sent via this Court's CM/ECF system to all counsel of record.

                                                /s/ Samantha J. Orlowski